|  |  |
|---|---|
| LARRY HEGGEM,<br><br>        Plaintiff,<br><br>        vs.<br><br>SNOHOMISH COUNTY CORRECTIONS, et al.,<br><br>        Defendants. | Case No. C11-1333 RSM<br><br>ORDER GRANTING DEFENDANT EICHELBERGER'S MOTION FOR SUMMARY JUDGMENT |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THIS MATTER comes before the Court on Motion for Summary Judgment by Defendant Deputy Matthew Eichelberger. Dkt. # 321. Having considered the parties' moving papers, the relevant record, and applicable case law, and having heard oral argument on the matter, the Court grants Defendant's Motion. For the reasons provided herein, all claims stated against Defendant Eichelberger shall be dismissed.

**Factual Background**

Plaintiff Larry Heggem's Amended Complaint states a single claim for excessive use of force by various officers of Snohomish County Corrections Bureau ("SCC"), including Deputy Defendant Matthew Eichelberger, while Mr. Heggem was in SCC custody as a pretrial detainee. Dkt. # 264. Mr. Heggem contends that SCC officers used excessive force while removing him from his cell, transporting him to the SCC Booking Unit, and forcibly disrobing him on the night of July 10, 2011. At the time, Deputy Eichelberger was working in the Booking Unit and it is

1  undisputed that he did not come into physical contact with Plaintiff until Mr. Heggem was placed
2  into a padded solitary safety cell, referred to as "SC1." Accordingly, the instant Order and the
3  following factual account focus on events that occurred after Eichelberger came into contact with
4  Plaintiff.
5        At approximately 9:30pm on July 10, 2011, Mr. Heggem was taken into the Booking
6  Unit, escorted by Defendants Deputy Stuart Nicholas and Sergeant Michael Miller as well as
7  non-party officers, Deputy Christopher Bennett and Sergeant Robin Otto. Dkt. # 330, ¶ 3
8  (Heggem Decl.). Defendant Eichelberger contends that the Booking Unit, in which he was
9  stationed, was placed on lockdown after it was alerted that deputies were bringing in an angry,
10 disruptive, uncooperative inmate for observation. Dkt. # 322, ¶ 4 (Eichelberger Decl.). Sgt.
11 Miller directed the deputies to transport Mr. Heggem to SC1 and instructed them that Plaintiff
12 was to be changed into a safety smock. *Id.* at ¶ 4. Deputies Bennett and Nicholas placed Mr.
13 Heggem in a prone position to disrobe him, with Bennett securing Plaintiff's right arm and
14 Nicholas his left. *Id.* at ¶ 9. Plaintiff contends that none of these officers informed him that they
15 were about to forcibly remove his clothes and that his face and chest were slammed to the floor.
16 Heggem Decl., ¶ 5. The parties dispute whether Mr. Heggem was actively resistant during this
17 episode.
18       At this point, Eichelberger entered the safety cell and began to exert control over
19 Plaintiff's legs using a figure-four control hold. Eichelberger Decl., ¶ 9. Eichelberger attests that
20 in executing this hold he crossed one of Mr. Heggem's ankles over the back of the knee joint of
21 Mr. Heggem's opposing leg and applied downward pressure across the ankle of the extended leg
22 in order to trap the bent leg in place. *Id.* at ¶ 10. Mr. Heggem asserts that at one point during the
23 disrobing, after his handcuffs were removed, he protectively tucked his right forearm under his
24 chest, pursuant to which Deputy Nicholas wrenched Plaintiff's right shoulder, grinding his body
25 into the floor and causing severe pain. *Id.* Though Eichelberger denies using any unnecessary or
26 painful pressure, Mr. Heggem asserts that, at this point, Eichelberger elevated Plaintiff's legs and
   shoved his feet toward his head, hyper-extending his back, straining muscular and soft tissue in
   his pelvis and abdomen, and driving Plaintiff's right shoulder into the floor. *Compare*
   Eichelberger Decl. ¶ 10 *with* Heggem Decl., ¶ 9. Mr. Heggem attests, "I felt my back being
   hyperextended as my feet were pushed near my head. At one point I thought I felt one of my feet

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

touch my head." Heggem Decl., ¶ 9. Deputy Eichelberger contends that he used the control hold only to keep Mr. Heggem's legs still during the disrobing and denies lifting Plaintiff's thighs off of the ground. Eichelberger Decl., ¶ 10.

Mr. Heggem contends that he sustained numerous injuries as a result of actions by SCC officers, including Deputy Eichelberger. Mr. Heggem asserts that these injuries were visible and included bruising, a shoulder sprain, and back pain resulting from the alleged hyperextension of his back and its aggravation of Plaintiff's degenerative disc disease. *See* Dkt. # 329, pp. 12-13. Deputy Eichelberger denies observing physical injuries sustained by Plaintiff or recalling Plaintiff ever indicating that he was in pain. Eichelberger Decl., ¶ 13.

## Procedural Background

Plaintiff filed his complaint *pro se* and *in forma pauperis* on August 8, 2011, alleging that numerous SCC staff violated his rights in July 2011 by being indifferent to his medical needs, assaulting him, using excessive force, defrauding, slandering and defaming him, and abusing or using arbitrary policies. Dkt. # 5. On July 25, 2012, the Court adopted the Report and Recommendations by Magistrate Judge Tuschida, denying Plaintiff's summary judgment motion and granting summary judgment dismissal with prejudice as to all Defendants except for Nicholas and Miller. As to Defendants Nicholas and Miller, the Court denied Defendants' motion for summary judgment limited to Plaintiff's claims of excessive use of force. Dkt. # 204. The Court thereafter granted Plaintiff's motion for appointment of counsel, and Plaintiff has since been represented by counsel. Dkt. ## 247, 250, 344, 350.

On April 4, 2014, Mr. Heggem filed his Amended Complaint in this action. Dkt. # 264. The Amended Complaint states a single claim for violation of Plaintiff's civil rights under 42 U.S.C. § 1983 arising from alleged excessive use of force by Defendants Nicholas and Miller. The Complaint also added allegations that Defendant Eichelberger applied excessive force in restraining Heggem's legs in the Booking Unit cell, causing Plaintiff to experience pain and injury. *Id.* at ¶ H. On August 5, 2014, Deputy Eichelberger filed the instant Motion for Summary Judgment, seeking dismissal of all claims against him with prejudice on account of Plaintiff's failure to show that Eichelberger violated his constitutional rights and on account of

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

Eichelberger's qualified immunity. Dkt. # 321. The instant Motion does not affect Plaintiff's excessive use of force claim against Defendants Nicholas and Miller.

## Standard of Review

Federal Rule of Civil Procedure 56 permits parties to move for summary judgment on all or part of their claims. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if she or he "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. "[T]he inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Ninth Circuit has emphasized that summary judgment is to be granted sparingly in excessive use of force cases, which "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Drummond ex rel. v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

## Analysis

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

### 1) Governing Constitutional Standard

As an initial matter, the parties dispute whether Plaintiff's claims are governed by the Eighth or Fourteenth Amendments of the U.S. Constitution. In reviewing an excessive use of force claim brought under 42 U.S.C. § 1983, the Court must first identify "the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id.*

It is well settled that the Eighth Amendment governs a prisoner's excessive use of force claim after she or he is convicted and is serving her or his sentence. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986); *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). The Eighth Amendment prohibits those who operate prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994). A plaintiff bringing a claim of excessive use of force in violation of the Eighth Amendment must prove the defendant did not apply force "in a good-faith effort to maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Whiley v. Albers*, 475 U.S. 312, 319 (1986) (requiring plaintiff to prove "the unnecessary and wanton infliction of pain") (internal quotations omitted). This stringent standard mandates proof that the defendant had a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

By contrast, the claims of a pretrial detainee are generally governed by the Fourteenth Amendment's Due Process clause. *See Bell v.* Wolfish, 441 U.S. 520, 535-36 (1979); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002). As the Supreme Court has explained, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 641, 671-72, n. 40 (1977). While the Eighth Amendment protects convicted and sentenced inmates from being subjected to "cruel and unusual punishment," the Due Process clause of the Fourteenth Amendment prohibits a pretrial detainee from being subjected to punishment at all. *Bell*, 441 U.S. 520, 535 n. 16. Because a pretrial detainee has not been adjudged guilty of a crime, but only had a judicial determination of probable cause as a

prerequisite to extended restraint of his liberty, the government may detain him only to ensure his presence at trial but not to inflict punishment. *Id.* at 536.

It follows that the protections afforded by the Due Process clause are at least as great as those of the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). An excessive use of force claim brought under the more protective Fourteenth Amendment is governed in the Ninth Circuit by an objective reasonableness standard. *See White v. Roper*, 901 F.2d 1501 (9th Cir. 1990) (explaining that review of an excessive force claim for violation of substantive due process under the Fourteenth Amendment "requires courts to balance several factors focusing on the reasonableness of the officers' actions under the circumstances") (internal quotations omitted); *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). The Ninth Circuit analyzes four factors to determine whether a prison official's use of force was excessive and therefore a due process violation: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *Id.*

In considering such a claim, the Ninth Circuit has also instructed that the court should ask "whether there was an express intent to punish, or whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (internal quotations and alterations omitted). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Id.* at 1029. Further, "to constitute punishment, the harm or disability caused by the government's actions must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030.

In the instant case, Mr. Heggem's status at the time of the underlying events is in question, complicating the choice of the correct constitutional standard governing his claims. Mr. Heggem had entered a guilty plea on February 25, 2011 to possession of a controlled substance, for which he was incarcerated. *See* Dkt. # 347, Ex. 2. However, later that same day, Mr. Heggem attempted to withdraw his guilty plea, claiming that it was coerced and that he was suffering

from an excruciating headache at the time that he entered it. *See Id.* at Ex. 4. The hearing on Plaintiff's ultimately unsuccessful request to withdraw his guilty plea did not take place until his sentencing on August 19, 2011, several months after the underlying events in this action took place. *See id.* at Exs. 10, 11.

The Court need not decide Plaintiff's status, and the governing constitutional standard that flows from it, at this time. Rather, the Court assumes without deciding that Plaintiff was a pretrial detainee at the time of the underlying events and applies the more protective standards of the Fourteenth Amendment Due Process clause to Mr. Heggem's excessive use of force claim for the purpose of this Motion.

### 2) Qualified Immunity

Qualified immunity shields government officials carrying out a discretionary function from civil liability so long as their actions "do [] not violate clearly established…constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts assess the defense of qualified immunity through a two-pronged inquiry, considering: (1) whether the defendant's conduct, taken in the light most favorable to plaintiff, violated the plaintiff's constitutional right, and (2) whether the plaintiff's constitutional right was clearly established such that a reasonable officer would understand that the conduct is unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within the discretion of the district court judge to decide which of the prongs of the qualified immunity analysis to address first in light of the circumstances of the case at hand. *Pearson*, 555 U.S. at 236. If the Court finds that the first prong has not been met, it need not proceed to consideration of the second prong, and vice versa. *Id.* at 236-42.

In determining whether a constitutional right was clearly established, the court should not consider the right as a "general proposition." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 12008). "Rather, '[t]he relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202) That is, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. Qualified immunity is therefore an objective inquiry. *Id.* Officers who mistakenly apply

more force than is required under the circumstances are still entitled to qualified immunity if that mistake was reasonable. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). As a whole, the qualified immunity inquiry is deferential to the government official, recognizing that while "the scenario may look different when gauged against the 20/20 vision of hindsight, [the court] must look at the situation as a reasonable officer in the [correction officer's] position could have perceived it." *Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir. 2003).

The Court determines that, under the factually intensive circumstances presented, it is appropriate to begin the qualified immunity inquiry with its second prong. *See Pearson*, 555 U.S. at 819 (recognizing that "there are cases in which the constitutional question is so factbound that the decision provides little guidance for future cases," and proceeding with the second prong appropriately avoids wasting the parties', and the court's, resources). The Court thus begins by asking whether a reasonable officer acting in the circumstances under which Deputy Eichelberger found himself on July 10, 2011, would understand that his application of force with respect to Mr. Heggem violated Plaintiff's constitutional rights. The Court finds that an officer in Deputy Eichelberger's position would not understand his use of force to be constitutionally prohibited.

First, the Court cannot find, in this particular instance, that the contours of Mr. Heggem's rights were sufficiently clear to an officer acting in the position of Deputy Eichelberger. Given the fact-intensive inquiry that the Court has had to perform in determining the relevant constitutional standard governing Mr. Heggem's claims, a reasonable officer in Deputy Eichelberger's position could not have been expected to know that a non-punitive, as opposed to malicious and sadistic, standard applied. Plaintiff correctly points out in his opposition brief that Deputy Eichelberger "was on notice that there were limits to the type of force permitted." Dkt. # 329, p. 25. The relevant inquiry, however, is not whether Deputy Eichelberger knew that there were limits, but whether it was sufficiently clear to him where these limits were drawn with respect to his use of force against an inmate in Mr. Heggem's position. Deputy Eichelberger had limited, if any, interaction with Plaintiff prior to his placement in the SC1[1] and acted with the

---

[1] Though Deputy Eichelberger denies in his declaration having any prior interaction with Mr. Heggem prior to July 10, 2011 (*see* Eichelberger Decl., ¶ 5), he testified on deposition that Mr. Heggem has "said hi" to him during an
(continued . . .)

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

exclusive knowledge that a resistive inmate was to be forcibly disrobed and placed into a padded safety cell for suicide watch. Under these circumstances, it would have been reasonable for Deputy Eichelberger to mistakenly believe that some degree of punitive force was permissible.

Further, even had Deputy Eichelberger had been certain as to Plaintiff's pretrial status, he is still entitled to immunity if he mistakenly applied excessive force in violation of Plaintiff's Fourteenth Amendment rights, so long as his mistake was reasonable. Deputy Eichelberger's role in the events that produced Mr. Heggem's alleged injuries was indisputably limited. Deputy Eichelberger had no contact with Mr. Heggem prior to his being placed prone on the floor of the SC1. The decision to place Mr. Heggem on suicide watch, to remove him from his cell, and to forcibly strip him cannot be attributed to the instant Defendant. Rather, Deputy Eichelberger was acting pursuant to the information provided to him and the specific directive to restrain Mr. Heggem's legs for a purpose that he did not select. *See Torres*, 548 F.3d at 1212 (providing that where "an officer has on objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous") (internal citations omitted).

As to the application of excessive force that Plaintiff attributes to Deputy Eichelberger, Plaintiff points solely to Eichelberger's alleged lifting of Plaintiff's legs in a manner that caused pain and injury to Plaintiff's back. Plaintiff does not allege that Deputy Eichelberger's application of a control hold in itself was unreasonable under the circumstances. Crediting Plaintiff's version of events, as the Court must upon summary judgment, the Court finds that a reasonable correction officer could have mistakenly believed that lifting Plaintiff's legs was not in violation of Plaintiff's constitutional rights. Under the circumstances, Deputy Eichelberger could have credibly believed that lifting Plaintiff's legs in the course of executing an ordered control hold was a reasonable response to the resistance exercised by an inmate who had been presented to Deputy Eichelberger as suicidal and in need of forcible disrobing and did not

---

(. . . continued)
evening suicide watch the previous evening (Dkt. # 331, Ex. 9, pp. 22:22-24:3) and further that he knew that Mr. Heggem had a reputation for being "a troublemaker, very argumentative" (*id.* at pp. 24:7-25:1). None of these interactions suggest that Deputy Eichelberger should have been familiar with Mr. Heggem's status as a pretrial detainee.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

constitute a punitive application of force. Deputy Eichelberger's mistake, if any, was not so unreasonable as to divest him of his immunity from suit.

## Conclusion

Accordingly, for the reasons provided herein, the Court hereby ORDERS that Defendant's Motion for Summary Judgment is GRANTED. As the Court finds that Defendant Deputy Matthew Eichelberger is entitled to qualified immunity, all claims against him shall be dismissed.

Dated this 3rd day of October 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE